## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| THE MITCHELL COMPANY, INC.,<br>MODEL HOMES, LLC, and HEXAGON<br>INVESTMENTS, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO 08-0342-KD-C |
| | ) | |
| JOSEPH J. CAMPUS III, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN B. SAINT, | ) | |
| | ) | |
| Additional Counterclaim Defendant. | ) | |

## ORDER

This matter is before the Court on The Mitchell Co, Inc.'s ("TMC") Motion for Leave to Amend its Answer to the Counterclaim filed by Defendant Joseph J. Campus, III ("Campus") (Doc. 38), Campus' Motion for Leave to Amend his Counterclaim (Doc. 39), TMC's Motion for Leave to file a Response to Campus' opposition to its Motion for Leave to Amend its Answer (Doc. 43). For the reasons set forth herein, TMC's Motion for Leave to amend its Answer (Doc. 38) is **DENIED,** such that TMC's Motion for Leave to file a response to Campus' opposition to its motion for leave (Doc. 43) is **MOOT;** and Campus' Motion for Leave to amend his counterclaim (Doc. 39) is **GRANTED.**

## I.   Background

### A.   Procedural History

Plaintiffs are comprised of The Mitchell Co., Inc. ("TMC") and Model Homes, LLC and

Hexagon, LLC ("the LLCs").  (Doc. 1 at 1-2).  TMC is a comprehensive real estate development company and Campus' former employer.  (Id.)  TMC is an Alabama corporation with its principal place of business in Mobile, Alabama.  (Id.)  Model Homes, LLC is an Alabama LLC with its principal place of business in Mobile, Alabama.  (Id.)  Model Homes' members assist with home sales and real estate transactions and are or were shareholders, directors or officers of TMC.  (Id.)  Hexagon, LLC is an Alabama LLC with its principal place of business in Mobile, Alabama.  (Id.)  Hexagon's members assist with home sales and real estate transactions and are or were shareholders, directors or officers of TMC.  (Doc. 1 at 1-2).  Plaintiffs allege that the LLCs were established to provide additional compensation to a select group of employees who were also directors, officers or shareholders, and who "would be performing special services for the Mitchell Company for its long range success."  (Id. at 2).

Defendant Joseph J. Campus, III ("Campus") is a former member of both LLCs as well as former employee, director and officer of TMC (Executive Vice-President and Head of Single Family Home Division).  (Id. at 1-2).  Campus is a Florida citizen.  (Id. at 2).  Counterclaim Defendant John B. Saint ("Saint") is the President of TMC and Manager of both LLCs.  (Id.)

Plaintiffs initiated this action on June 16, 2008, filing a Complaint against Campus for equitable relief and to obtain a declaration of rights and obligations.  (Doc.1).  In so doing, Plaintiffs seek an order that the LLCs maintain in trust certain real properties in its possession which "shall sum to a value" approximately equal with the "Pawlowski" valuation (approximately $1,250,000) "until the measure of Campus' obligation to disgorge himself of increased valuation while he was engaged in faithless service for TMC" is determined.  (Id.)  TMC alleges that granting the requested relief will protect Campus' maximum possible interest (if no disgorgement is ordered), the LLCs'

interests (by not liquidating the real property) and TMC's interest and the interests of fairness (in avoiding Campus' possible wasting, hiding or spending of the money).  (Doc. 1 at 7).

On July 28, 2008, Campus filed his Answer, a motion to add John B. Saint as a party, and counterclaims asserting (in part) that Plaintiffs should be required to advance him legal fees and expenses (pursuant to the terms of an indemnity agreement executed with TMC) incurred in connection with a related lawsuit (the "underlying action") pending in this Court (The Mitchell Co. Inc. v. Joseph J. Campus, III, CV 07-177-KD-C (S.D. Ala. Mar. 7, 2007)).  (Docs. 15, 16).  Specifically, Campus' counterclaim seeks to determine his rights to an advancement of legal fees/expenses incurred in defense of CV 07-177 (the underlying action) pursuant to the Indemnity Agreement with TMC; to determine his rights to require the two LLCs to purchase his membership interests; to obtain equitable relief to prevent injury to him as a result of Model Home LLC's actions to liquidate assets and make unsecured loans to TMC (wasting the LLC's assets and impairing its ability to buy his membership interest as required by the Operating Agreement); and to recover damages for the conduct of Saint, TMC and both LLCs.  (Doc. 15 at ¶¶ 1-2).

On August 22, 2008, Campus filed a motion for partial summary judgment, asserting that he is entitled to summary judgment on his claims for reimbursement of his defense expenses in the underlying action as well as a declaration that his defense in that action must be provided at TMC's expense.  (Docs. 24, 25, 26).  Campus adds that while he demanded on June 25, 2008 that TMC fund his defense in the underlying action and reimburse him for his expenses incurred pursuant to the Indemnity Agreement, TMC has refused his demand.  (Id.)

On September 2, 2008, Plaintiffs filed its Answer to Campus' counterclaim.  (Doc. 28).  On September 11, 2008, TMC filed its opposition to Campus' motion for summary judgment.  (Docs.

30, 31).  On September 19, 2008, Campus filed his reply to TMC's opposition.  (Doc. 35).  On September 22, 2008, the Court issued the Rule 16(b) Scheduling Order, setting the deadline for motions for leave to amend pleadings for October 1, 2008.  (Doc. 36).  On September 23, 2008, the Court granted Campus' motion to add John B. Saint as a counterclaim defendant.  (Doc. 37).

On September 30, 2008, TMC filed a motion for leave of court to amend its original Answer to Campus' counterclaim, to add the following Thirty-Second Defense:

> Campus' counterclaims for advancement of legal expenses and "fees on fees" are barred, as the claims were compulsory counterclaims in the lawsuit styled The Mitchell Company, Inc. v. Joseph J. Campus, III, case number CV 07-177-KD-C, pending in the U.S. District Court for the Southern District of Alabama ("the Underlying Action"), and Campus failed to timely plead these compulsory counterclaims in the Underlying Action.

(Doc. 38).

On October 1, 2008, Campus filed a motion for leave of court to amend his original counterclaim, to plead two additional counterclaims concerning advancement and indemnification (Counts III and IV).  (Doc. 39).  Specifically, in his proposed amended counterclaim, Campus sets forth a new Count III, seeking a declaratory judgment as to his rights to advancement of defense fees in *the instant action (CV 08-342)*; and a new Count IV, seeking indemnification of "fees on fees" or the expenses incurred while pursuing Plaintiffs' counterclaims relating to TMC's advancement obligations to him in *the instant action.*  (Doc. 39-4 at 10-11).

On October 3, 2008, the Court ordered the parties to file responses to these motions for leave/amend on or before October 20, 2008.  (Docs. 40, 41).  On October 15, 2008, Campus filed an opposition to TMC's motion for leave of court to amend to its answer to his counterclaim, asserting that his counterclaim for advancement did not arise from the transactions at issue in the underlying action and so is not compulsory under Rule 13(a), such that the proposed amendment by

4

TMC is futile.  (Doc. 42).  On October 20, 2008, TMC filed a motion for leave of court to file a response to Campus' opposition to its motion for leave of Court to amend its original answer to his original counterclaim.  (Doc. 43).  TMC did not file a response to Campus' motion for leave to amend his counterclaim.

B.   **Factual History**

From February 13, 1991 or June 6, 1990[1] through March 7, 2007, Campus was employed by TMC as one of its officers, namely, the Executive Vice-President and Head of Single Family Home Division.  On August 1, 1994, Campus and TMC executed an Indemnity Agreement ("Agreement") in consideration of Campus' agreement to serve as an officer of TMC.  (Doc. 15-2).  The Agreement provides that TMC will indemnify Campus for expenses and fees which result from <u>any</u> claims arising from his agreement to serve as an officer and his performance of duties as an officer.  (<u>Id</u>. at ¶ 1).  However, the Agreement also provides that it shall <u>not</u> apply to any expenses or fees incurred in any action or proceeding which results in a final order or judgment against Campus and in favor of TMC or any person/entity on behalf of TMC, but only where liability is established in such final order or judgment based upon Campus' negligence, gross negligence or intentional misconduct.  (<u>Id</u>.)

On March 7, 2007, TMC terminated Campus and filed the underlying action (CV 07-177) alleging that Campus breached his fiduciary duties and/or was negligent in performance of his duties (pocketing a purported $1.7 million for five properties).  (CV 07-177, Doc. 1).  On April 9, 2007, Campus filed an action in this Court in which he sued the LLCs (along with others) seeking an injunction and an accounting of his interest (CV 07-257); his suit was dismissed on November 6,

---

[1]  The parties set forth different start dates.

2007. (CV 07-257, Doc. 36). Subsequently, related to Campus' withdrawal from both LLCs, the parties engaged in a valuation process pursuant to the LLCs' Operating Agreements. (Doc. 1 at Exs. B-1, B-2). On June 2, 2008, the results of a May 26, 2008 valuation (the Pawlowski valuation) of Campus' share of the LLCs were presented to the two LLCs through a letter sent by Campus' attorney; the valuation concluded that as of November 30, 2007, Campus' share of Model Homes was $1,152,450, and his share of Hexagon was $96,642. (Docs. 1 at ¶¶ 17-18; Exs. B-3, B-4). Through this notification, Campus' attorney demanded full payment of these valuation amounts, or notification of the LLCs' intentions to make installment payments, within 10 business days. (Id.)

## II.    Analysis

### A.    Applicable Law

Rule 15(a) of the Federal Rules of Civil Procedure governs requests for leave to amend pleadings and leave should be freely given except in the presence of countervailing factors such as undue prejudice to the opposing party and futility of the amendment. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962);[2] Bartronics, Inc. v. Power-One, Inc., 245 F.R.D. 532, 534 (S.D. Ala. 2007). Indeed, leave to amend a pleading may properly be denied under Rule 15(a) "when such amendment would be futile." Hall v. United Ins. Co. of America, 367 F.3d 1255, 1263 (11th Cir. 2004). While cases applying the futility test in this circuit – to raise a new defense in a proposed amended answer – are sparse, this Court has derived guidance from analogous authorities relating to amended complaints. See, e.g., Bartronics, 245 F.R.D. at 535 (citing Arista Records, Inc. v. Flea World, Inc., 356 F. Supp. 2d 411, 419 (D.N.J. 2005) (stating that "[t]he same standard applies to motions for

---

[2] Factors for consideration include: 1) whether there has been undue delay, bad faith, dilatory motive or repeated failures to cure deficiencies by amendments previously allowed; 2) whether allowing an amendment would cause undue prejudice to the opposing party; and 3) whether an amendment would be futile. Foman, 371 U.S. at 182.

leave to amend both complaints and answers[]"). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." Id. (citing St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 822-823 (11th Cir. 1999)). "Translating that standard to the amended answer context, a finding of futility is, in effect, a legal conclusion that the proposed defense would necessarily fail." Id. See also e.g., Massie v. Board of Trustees, Haywood Community College, 357 F. Supp. 2d 878, 884 (W.D.N.C. 2005) (stating that a motion to amend an answer to state a new affirmative defense should be denied as futile only if proposed amendment is "clearly insufficient or frivolous on its face").

Rule 13(a) of the Federal Rules of Civil Procedure governs counterclaims and provides that "[a] pleading must state as a counterclaim any claim that -- at the time of its service -- the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[] . . . and does not require adding another party over whom the court cannot acquire jurisdiction." FED.R.CIV.P 13(a)(1). See, e.g., Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 (11th Cir. 1998). The primary purpose of Rule 13 "is to avoid circuity of actions and to enable the court to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence." Grow Group, Inc. v. Industrial Corrosion Control, Inc., 601 So.2d 934, 936 (Ala. 1992). To effect the purpose of Rule 13, the consequence for failing to assert a compulsory counterclaim is a bar against the assertion of that claim in any other action. See e.g., Owens v. Blue Tee Corp., 177 F.R.D. 673, 682 (M.D. Ala. 1998); Brooks v. Peoples Nat'l Bank of Huntsville, 414 So.2d 917, 920 (Ala. 1982). "Compulsory counterclaims which are not brought are

'thereafter barred.'" <u>Nippon Credit Bank, Ltd. v. Matthews</u>, 291 F.3d 738, 755 (11th Cir. 2002). This means that where a party fails to plead a counterclaim, it is precluded from asserting that claim in future litigation. <u>See</u>, <u>e.g.</u>, <u>Cleckner v. Republic Van & Storage Co.</u>, 556 F.2d 766, 769 n. 3 (5th Cir. 1977);[3] 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1417.  The objectives of Rule 13(a) are to provide complete relief to the parties in a single suit, to promote judicial economy, and to avoid the inefficiencies of piecemeal litigation. <u>John Alden Life Ins. Co. v. Cavendes</u>, 591 F. Supp. 362, 366 (S.D. Fla. 1984). Rule 13(a) is particularly directed against one who "failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." <u>Southern Construction Co. v. Pickard</u>, 371 U.S. 57, 60 (1962).

In the Eleventh Circuit, federal courts apply the logical relationship test to determine whether a claim is compulsory.[4] <u>Republic Health Corp. v. Lifemark Hospitals of Fla., Inc.</u>, 755 F.2d 1453, 1454-1455 (11th Cir. 1985) (citing <u>United States v. Aronson</u>, 617 F.2d 119, 121 (5th Cir. 1980)).[5] In <u>King v. Hainje's, Inc.</u>, Slip Copy, 2008 WL 3075756 (S.D. Ala. Jul. 22, 2008), this Court

---

[3] Decisions issued by the former Fifth Circuit rendered prior to October 1, 1981 are valid precedent in the Eleventh Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

[4] <u>Central Reserve Life Ins. Co. v. Kiefer</u>, 211 F.R.D. 445, 448 (S.D. Ala. 2002) (footnote omitted):  Under Alabama law, a claim is compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." ALA. R. CIV. P. 13(a).[] "A claim arises out of the same transaction or occurrence if there is a 'logical relationship' between the claims." <u>See</u> <u>also</u> <u>Mississippi Valley Title Ins. Co. v. Hardy</u>, 541 So.2d 1057, 1059-1060 (Ala. 1989) (noting that "[claims are logically related] to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently[]").

[5] <u>See</u> note 3, *supra*.

explained that:

> [a] counterclaim is compulsory if it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." . . . . The test the courts use to determine whether the claim and counterclaim arise from the same transaction or occurrence is the "logical relationship" test . . . . a logical relationship exists when the "'same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant.'" . . . .

Id. at *2 (citations omitted). "Under this test, 'a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.'" Goings v. Advanced Systems, Inc. of Suncoast, Slip Copy, 2008 WL 4195889, *2 (M.D. Fla. Sept. 12, 2008). A claim against an opposing party arising out of a separate transaction or occurrence is permissive, and may be asserted in a separate action. FED.R.CIV.P. 13(b).

**B.    Pending Motions**

At the outset, this Court's Rule 16(b) Scheduling Order provides that the parties had until October 1, 2008, to amend any pleadings. (Doc. 36). As such, both TMC's September 30, 2008 motion for leave of court to amend its Answer to Campus' original counterclaim (Doc. 38) and Campus' October 1, 2008, motion for leave of court to amend his original counterclaim (Doc. 39), are timely filed. Nevertheless, the inquiry does not end there, because the Court must address the parties' respective substantive contentions, i.e., the futility of TMC's amendment and the compulsory or permissive nature of Campus' original counterclaim.

**1.    TMC's Motion for Leave to Amend its Answer to Campus' Counterclaim**

The Court concludes that it would be futile to permit TMC to amend its Answer to Campus' counterclaim to add the defense that Campus' advancement and "fees on fees" claims are barred

because they were compulsory in the underlying action (07-177). This is because Campus' advancement counterclaim was not compulsory in the underlying action because it arises from a separate occurrence, and thus, the defense would necessarily fail.

The underlying action against Campus was filed by Plaintiffs "to secure redress for unlawful practices engaged in by [Campus][.]" (CV 07-177, Docs. 1, 29, 79). In the Second Amended and Restated Complaint in that action, Plaintiffs assert that Campus (and others):

> . . . through unlawful and wrongful acts have profited from or are profiting from business activities in which they, in general, had a conflict of interest, misrepresented and/or suppressed information, failed to act in the best interest of The Mitchell Company, violated their duties of due care, loyalty and good faith or otherwise conspired with each other to cause injury to The Mitchell Company for their own profit and gain . . . .

(Doc. 79 at 1-2). From this, Plaintiffs allege the following claims against Campus: intentional, reckless or willful fraud; negligent/mistaken fraud; suppression; breach of fiduciary duty; negligence; wantonness; common law civil conspiracy; conversion; officer and director liability; misappropriation of trade secrets; disgorgement; and unjust enrichment. (Id. at 14-32). In contrast, in the instant action, Campus' counterclaim for advancement of defense fees in CV 07-177 (and to recover fees for having to seek same) stems from one specific contract – the Indemnity Agreement with TMC. Specifically, Campus' advancement counterclaim seeks a declaratory judgment of his rights to advancement because TMC has failed and refuses to fund his defense in the underlying action (CV 07-177) in violation of their contractual rights under the Indemnity Agreement.[6] Campus' advancement counterclaim in the instant case thus arises from TMC's alleged failure to

---

[6] The Indemnity Agreement between Campus and TMC provides that it applies to any claims arising from his agreement to serve as a TMC officer and his performance of his duties as a TMC officer, and that if suit is brought against him with respect to any covered claim, "*the company shall conduct, at its expense, the defense thereof[]*" and Campus "shall cooperate in the defense of such claims to the extent reasonably required by the Company. (Doc. 15-2 at ¶¶ 1, 3, 4 (emphasis added)).

honor its contractual obligations under the Indemnity Agreement, and is *ex contractu*.  This is wholly distinct from TMC's claims against Campus in the underlying action – claims which arise from his alleged unlawful and wrongful acts as an officer and director of TMC and which are *ex delicto*.  The fact that one action is *ex contractu* and the other is *ex delicto* and that the claims arise out of different occurrences and rest on different operative facts, compels a finding that Campus' advancement counterclaim was not compulsory in the underlying action (CV 07-177).

Moreover, while the Court has been unable to locate any particularly instructive Alabama or Eleventh Circuit case law addressing under what circumstances an advancement claim may be deemed a compulsory counterclaim, case law from other courts proves helpful.  For example, in International Airport Centers, L.L.C. v. Citrin, 455 F.3d 749, 751 (7th Cir. 2006) the Court held that where an employee had an entitlement under his employment contract to an advance for attorneys' fees that he incurred in the defense of the employer's suit against him for violation of the Federal Computer Fraud and Abuse Act, his claim for fees and expenses was independent of the merits of the suit for which the litigation expenses were sought, and thus was not a compulsory counterclaim. The Seventh Circuit reasoned that " the claim does not arise out of the litigation; it arises out of the employment contract."  Id.

In Allstate Ins. Co. v. Thomas, 1974 WL 172917, *2 (Del. Super. Jan 24, 1974) (emphasis added), the Delaware court discussed the *ex contractu* versus *ex delicto* distinction when analyzing the compulsory or permissive nature of counterclaims and concluded as follows:

> Travelers contends that Allstate's declaratory judgment action is barred because it constitutes matters which should have been raised as a compulsory counterclaim in a prior action. ***The prior action is a negligence action by the insured***, Thomas, against the alleged tortfeasor, the uninsured motorist . . . . ***Allstate's present action, however, seeks a judicial determination of the contractual rights*** of two insurance companies on certain alleged insurance policies.

11

> *It is clear, therefore, that Allstate's present claim did not constitute a "compulsory" counterclaim in the Thomas action since it did not "arise out of the transaction or occurrence that is the subject matter of (Thomas') claim." . . . . The fact that one action is ex delicto and the other ex contractu, taking into account all the factors, compels this determination . . . . Moreover . . . ."[t]he liability under the policy and the liability for negligence are indeed two separate transactions."*
>
> *. . . . Allstate's present action asserts a claim that, at best, constitutes a "permissive" counterclaim in the prior action. Consequently, Allstate is not barred from now seeking declaratory relief in an action separate and independent from the Thomas action.*

See also e.g., American Fidelity Fire Ins. Co. v. Hood, 37 F.R.D. 17, 19-20 (E.D.S.C. 1965) (recognizing the *ex contractu* versus *ex delicto* distinction).

As already noted *supra,* in this case, the subject matter of Campus' advancement claim is rooted in a contract that is part of his employment agreement with TMC – the Indemnity Agreement – and TMC's liability and obligations under same. In fact, the Indemnity Agreement states, in part, that it was executed "in consideration" of Campus' agreement "to serve as an officer" of TMC. (Doc. 15-2 at 1). It is not rooted in the claims surrounding his alleged liability to TMC for negligence, breach of fiduciary duty, etc. Accordingly, his advancement counterclaim was not compulsory in the underlying action, and thus, is not barred. In light of the foregoing, the Court finds that TMC's Motion for Leave to Amend its Answer (Doc. 38) is **DENIED**, such that TMC's Motion for Leave to file a Response to Campus' opposition to their Motion for Leave to Amend (Doc. 43) is **MOOT.**

### 2.    Campus' Motion for Leave to Amend his Counterclaim

The Court now turns to Campus' motion for leave to amend his counterclaim. (Doc. 39). In his proposed amended counterclaim, Campus sets forth a new Count III, seeking a declaratory judgment as to his rights to advancement *in the instant action (CV 08-342)*; and a new Count IV,

seeking indemnification of "fees on fees" or the expenses incurred while pursuing Plaintiffs' counterclaims relating to TMC's advancement obligations to him *in the instant action*. (Doc. 39-4 at 11-12). On October 3, 2008, this Court ordered that any response to Campus' motion for leave to amend his counterclaim shall be filed by on or before October 20, 2008. (Doc. 40). To date, Plaintiffs have filed no response to Campus' motion. As noted *supra*, Rule 15(a) provides that timely motions for leave to amend are held to a very liberal standard and leave to amend should be freely given when justice so requires. See, e.g., Bartronics, 245 F.R.D. at 534; Spanish Broadcasting System, 376 F.3d at 1077; Foman, 371 U.S. at 182. As such, because Campus' motion for leave was filed timely, *see supra*, and there has been no response filed by TMC indicating any reason for denial, the Court finds that Campus' motion is due to be **GRANTED.**

### III.   Conclusion

Based upon the foregoing, the Court finds that TMC's Motion for Leave to amend its Answer (Doc. 38) is **DENIED,** such that TMC's Motion for Leave to file a response to Campus' opposition to its motion for leave (Doc. 43) is **MOOT;** and Campus' Motion for Leave to amend his counterclaim (Doc. 39) is **GRANTED.**

**DONE** and **ORDERED** this the 29th day of December, 2008.

 **S/ Kristi K. DuBose**
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**