**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THE MITCHELL COMPANY, INC.,** | ) | |
| **MODEL HOMES, LLC, and HEXAGON** | ) | |
| **INVESTMENTS, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO 08-0342-KD-C** |
| | ) | |
| **JOSEPH J. CAMPUS III,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JOHN B. SAINT,** | ) | |
| | ) | |
| **Additional Counterclaim Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant Joseph J. Campus, III's Motion to Dismiss Plaintiffs' Complaint and/or for Judgment on the Pleadings (Doc. 44), Plaintiffs' Response in opposition (Doc. 51) and Campus' reply thereto (Doc. 53).

**I.      Background**

**A.      Procedural History**

Plaintiffs are The Mitchell Co., Inc. ("TMC"), and Model Homes, LLC and Hexagon Investments, LLC ("the LLCs"). (Doc. 1 at 1-2). TMC is a comprehensive real estate development company and Campus' former employer. (Id.) TMC is an Alabama corporation with its principal place of business in Mobile, Alabama; it has no parent company. (Id.) (See also Doc. 2). Model Homes, LLC is an Alabama LLC and all of its members are Alabama citizens. (Id.) Model Homes'

members assist with home sales and real estate transactions and are or were shareholders, directors or officers of TMC; it has no parent company.  (Id.)  (See also Doc. 2).  Hexagon Investments, LLC is an Alabama LLC and all of its members are Alabama citizens.  (Id.)  Hexagon's members assist with home sales and real estate transactions and are or were shareholders, directors or officers of TMC; it has no parent company.  (Doc. 1 at 1-2; Doc. 2).

Defendant Joseph J. Campus, III ("Campus") is a former member of both LLCs as well as former employee, director and officer of TMC (Executive Vice-President and Head of Single Family Home Division).  (Id. at 1-2).  Campus is a Florida citizen.  (Id. at 2).  Counterclaim Defendant John B. Saint ("Saint") is an Alabama citizen and the President of TMC and manager and member of both LLCs.  (Id.)

Plaintiffs initiated this action on June 16, 2008, by filing a Complaint against Campus for equitable relief and to obtain a declaration of rights and obligations with regard to Campus' membership interests in the LLCs.  (Doc. 1).  In so doing, Plaintiffs allege that Model Homes and Hexagon Investments ("the LLCs") were formed for the purpose of assisting the sale of homes in real estate developments and over time, engaged in other transactions, the LLCs are closely related to TMC, the members of the LLCs are or were directors, officers or shareholders of TMC, and the LLCs were established to provide additional compensation for a select group of employees who were also directors, officers or shareholders and who were and "would be performing special services for TMC for its long range success[]."  (Id.)  Plaintiffs also allege that Campus would not have been offered the opportunity to join either LLC if not for his role as a TMC officer/director, if TMC had known about Campus' activities he would not have been offered membership in the LLCs, and that Campus' interests in the LLCs were part of Campus' compensation with TMC and

were tied to his fiduciary role in his capacity as an employee, officer and director. (Id.) From this, Plaintiffs seek an order directing the LLCs to maintain in trust certain real properties in its possession which "shall sum to a value" approximately equal with the "Pawlowski" valuation (approximately $1,250,000) "until the measure of Campus' obligation to disgorge himself of increased valuation while he was engaged in faithless service for The Mitchell Company" is determined. (Id.) Plaintiffs allege that granting the requested relief will protect Campus' maximum possible interest (if no disgorgement is ordered), the LLCs' interests (by not liquidating the real property) and TMC's interest and the interests of fairness ("in avoiding Campus' possible wasting, hiding or spending of the money which is rightfully" TMC's). (Id.)

On July 28, 2008, Campus filed his Answer, a motion to add John B. Saint as a party, and counterclaims to determine his rights to an advancement of legal fees/expenses incurred in defense of The Mitchell Co. Inc. v. Joseph J. Campus, III, CV 07-177-KD-C (S.D. Ala. Mar. 7, 2007) (the underlying action) pursuant to the Indemnity Agreement with TMC. (Doc. 15 (See also Doc. 48)). Campus also requests the Court to determine his rights to require the two LLCs to purchase his membership interests, and to grant equitable relief to prevent injury to him as a result of Model Home's actions to liquidate assets and make unsecured loans to TMC (wasting the LLC's assets and impairing its ability to buy his membership interest as required by the Operating Agreement). (Id.) In addition Campus requests damages for the conduct of Saint, TMC and both LLCs. (Id.)

B.    **Factual History**

From June 6, 1990 or February 13, 1991[1] through March 7, 2007, Campus was employed by TMC as one of its officers, namely, the Executive Vice-President and Head of Single Family Home

---

[1]  The parties set forth different start dates.

Division.  On March 7, 1994, Campus was elected Executive Vice-President of TMC.  (Doc. 35 at Ex. D).  On August 1, 1994, Campus and TMC executed an Indemnity Agreement in consideration of his agreement to "become, or remain in his capacity as, an officer" of TMC.  (Doc. 25 at Ex. A).  On August 9, 1996, Model Homes was formed.  (Doc. 1 at Ex. B-1).  At that time, Campus was made a member with a 20% membership interest.  (Id. at 11).  On November 11, 2005, Hexagon was formed.  (Id. at Ex. B-2).  At that time, Campus was made a member with a 16.667% membership interest.  (Id. at ¶ 11).

Saint is the President of TMC, Manager of Model Homes and one of the Managers of Hexagon.  (Doc. 48 at 2-3; Doc. 52 at 2).  All current members of Model Homes and Hexagon are officers/directors of TMC.  (Id.)

TMC alleges that in March 2007, Campus met with certain TMC officers and admitted that he had received around $1.7 million from transactions where TMC had bought property from friends or associates of Campus.  (Doc. 30; Doc. 31 at Ex. A).  On March 7, 2007, TMC terminated Campus and filed the underlying action (CV 07-177), alleging that he breached his fiduciary duties and/or was negligent in performance of his duties and seeking disgorgement of his membership interests in the LLCs.  TMC asserts that its investigators concluded that beginning in 2005, Campus devised and began carrying out a scheme in which he secretly participated in the purchase of various properties and then resold the properties to TMC without disclosing his private interest, at a substantial profit to Campus and his co-conspirators.  (Doc. 30; Doc. 31 at Ex. A).

Campus alleges that upon his termination, and again on April 5, 2007, he notified the members of each LLC of his intent to withdraw from membership.  (Doc. 15 at 9, ¶ 19; Doc. 48 at 5, ¶ 19).  Campus asserts that his withdrawal became effective on October 3, 2007 (180 days after

he provided notice of his intent to withdraw).  (Doc. 15 at 11, ¶¶ 30, 49; Doc. 48 at ¶ 30).  Plaintiffs dispute the date of effective withdrawal.  (Doc. 51 at 2).

On April 9, 2007, Campus sued the LLCs (along with others) seeking an injunction and an accounting of his interest (CV 07-257-KD-C).  His suit was dismissed on November 6, 2007 due to lack of diversity of citizenship (at the time of filing that action, Campus was still a member of the LLCs).  (CV 07-257, Doc. 36).  Subsequently, related to Campus' withdrawal, the parties engaged in a valuation process pursuant to the LLCs' Operating Agreements.  (Doc. 1 at Exs. B-1, B-2).

Campus alleges that pursuant to the LLCs' Operating Agreements, on October 3, 2007, he became entitled to receive, at a minimum, the first installment payment from each of the LLCs for his membership interests.  (Doc. 1 at Exs. B-1 and B-2 at ¶ 11.01(d)).  Plaintiffs contend that Campus is not entitled to receive any payment from the LLCs and that the Operating Agreements do not require the LLCs to make payments to Campus.  (Doc. 51 at 2).  Campus and the LLCs were unable to agree to the fair market value of Campus' membership interests.  (Doc. 28 at ¶ 24).  As such, on November 2, 2007, the LLCs notified Campus that they were electing for a determination of the fair market value of his interests to be made by an independent appraiser, Mr. Mark Pawlowski, CPA ("Pawlowski").  (Doc. 15 at Ex. C).  On May 26, 2008, the valuation ("the Pawlowski valuation") of Campus' interests in the LLCs was completed and the results were presented to the two LLCs through a letter from Campus' attorney.   The valuation concluded that as of November 30, 2007, Campus' share of Model Homes was $1,152,450, and his share of Hexagon was $96,642.  (Doc. 1 at ¶¶ 17-18 and Exs. B-3, B-4).  On June 2, 2008, Campus, through his attorney, demanded full payment of these valuation amounts from the LLCs, or notification of the LLCs' intentions to make installment payments within 10 business days.  (Id.)  The LLCs did

not make payment to Campus but instead – along with TMC – filed the present action requesting a declaratory judgment as to the rights and obligations of the parties and equitable relief in the form of the imposition of constructive trusts over the LLCs' assets.  (Doc. 1 at ¶¶ 25-26).

## II.    Analysis

## A.    Standard of Review

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the plaintiff has failed to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true.  See, e.g., United States v. Gaubert, 499 U.S. 315, 327 (1991); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).  Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff.  See, e.g., Brower v. County of Inyo, 489 U.S. 593, 598 (1989).  Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. Further, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965 (2007) (citations omitted).  Rather, "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  Id. at 1965.  "The Court has instructed us that the rule . . . 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Watts v. Fla. Int'l Univ., 2007 WL 2331029, *5 (11th

Cir. Aug. 17, 2007) (quoting <u>Twombly</u>, 127 S.Ct. at 1965)).  "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'"  <u>Id</u>.

**B.    <u>Discussion</u>**

Campus moves to dismiss Plaintiffs' Complaint or in the alternative for judgment on the pleadings, asserting that he is entitled to be paid more than $1.2 million for his membership interests in Model Homes and Hexagon based on the following:

- The Complaint fails to state an actionable claim for declaratory and equitable relief and Plaintiffs lack standing because they have not shown that they are likely to suffer future injury or irreparable harm;

- TMC fails to state an actionable claim for declaratory and equitable relief because it is neither a party to, nor beneficiary of, the LLCs' Operating Agreements;

- the LLCs fail to state an actionable claim for declaratory and equitable relief because they impermissibly rest their claims on TMC's purported interests and fail to allege the prospect of suffering any injury caused by Campus;

- the Complaint fails to state an actionable claim because the relief sought is not supported by the plain language of the LLCs' Operating Agreements; and,

- the Complaint fails to state an actionable claim for declaratory relief because Plaintiffs' allegations demonstrate that Campus' cause of action against the LLCs has already accrued and Campus is entitled to judgment in his favor.

Consistent with the "cases" and "controversies" requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a declaratory judgment may be issued only in the case of an "actual controversy."  <u>Emory v. Peeler</u>, 756 F.2d 1547, 1551-1552 (11th Cir. 1985). Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties.  <u>Id</u>. at 1552.  "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred[] [and] the continuing controversy may not be conjectural, hypothetical, or

contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Id. (internal quotations and citations omitted).

Article III, Section Two, of the United States Constitution restricts the federal judicial power to the resolution of cases and controversies, and the case or controversy requirement is satisfied only where a plaintiff has standing.  See, e.g., DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342-343 (2006); Socialist Workers Party v. Leahy, 145 F.3d 1240, 1244-1245 (11th Cir. 1998); Bowen v. First Family Financial Services, Inc., 233 F.3d 1331, 1339-1341 (11th Cir. 2000); Alabama Freethought Ass'n v. Moore, 893 F. Supp. 1522, 1529-1531 (N.D. Ala. 1995).  A litigant's standing is essential in order to create an Article III case or controversy as standing "strikes at the heart of a federal court's jurisdiction to resolve the merits of a dispute."  Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) ("[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims[]"). Resolving the question "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006) (citations omitted).

The plaintiff must adequately establish; 1) an injury in fact (a "concrete and particularized" invasion of a "legally protected interest"); 2) causation (a "fairly traceable" connection between the alleged injury in fact and the alleged conduct of the defendant); and 3) redressability (that it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (calling these the "irreducible constitutional minimum" requirements and stating that the elements

are "not mere pleading requirements but rather an indispensable part of the plaintiff's case [ . . . ] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation[]"). See also e.g., Scott v. Taylor, 405 F.3d 1251, 1259 (11th Cir. 2005); Mohawk Industries, Inc. v. Interface, Inc., Slip Copy, 2008 WL 5210537, *2 (N.D. Ga. Nov. 6, 2008).

A crucial element of standing is injury-in-fact, *i.e.*, the invasion of a legally protected interest which is concrete and particularized, not conjectural or hypothetical. Lujan, 504 U.S. at 560-561. "It is not enough that 'the [plaintiff]'s complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements[]' . . . [and] [i]f the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." Elend, 471 F.3d at 1206 (citations omitted). It is undisputed that "harm to economic interests presents a cognizable injury for purposes of standing." Alabama-Tombigbee Rivers Coalition v. Norton, 338 F.3d 1244, 1252 (11th Cir. 2003).

The injury in fact inquiry "serves to distinguish a person with a direct stake in the outcome of litigation – even though small – from a person with a mere interest in the problem." United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 690, n. 14 (1973). Indeed, "one of the three prudential considerations of judicial restraint which courts use when addressing standing issues includes 'whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.'" Besselaar v. Siegelman, 2001 WL 936196, *22 (S.D. Ala. May 2, 2001) (citing Saladin v. City of Milledgeville, 812 F.2d 687, 690 (11th Cir. 1987)). Specifically, a corporation does not have standing to assert claims belonging to a related or closely affiliated corporation simply because their businesses are intertwined. See, e.g.,

24/7 Records, Inc. v. Sony Music Entertainment, Inc., 566 F. Supp. 2d 305, 314-315 (S.D.N.Y. 2008); R&B Realty Group v. Heiser, 322 F. Supp. 2d 206, 210 (D. Conn. 2004); Hudson Optical Corp. v. Cabot Safety Corp., 162 F.3d 1148 (2d Cir. 1998) (unpublished); Diesel Systems, Ltd. v. Yip Shing Diesel Engingeering Co., Ltd., 861 F. Supp. 179, 181 (E.D.N.Y. 1994); Picture Lake Campground v. Holiday Inns, Inc., 497 F. Supp. 858, 863 (E.D. Va. 1980). Even where the directors and officers of one company decided to incorporate a separate company, whatever the motive, they become "bound by the disadvantages as well as the advantages of separate incorporation." Diesel, 861 F. Supp. at 181. Thus, while one company may be merely a shell corporation, wholly controlled by another, "[a] corporation may not pierce the veil of another corporation that it set up for its own benefit in order to advance the claims of that corporation." Id. It is well established that "where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone . . . who has a right of recovery, even though in an economic sense[] real harm may well be sustained [by other entities as a result] . . . of such wrongful acts . . . ." Martens v. Barrett, 245 F.2d 844, 846 (5th Cir. 1957) (footnotes omitted).[2]

In the Complaint, the Plaintiffs request a declaratory order that at least temporarily excuses the LLCs from the provisions of their Operating Agreements, which appear to require that Campus be paid the fair market value for his interest in the LLCs minus any allowable offset. The bases for this request are as follows: 1) the amount owed to Campus for his interest should be greatly reduced because of Campus "faithless service" to TMC (the LLCs contend that Campus' "faithless service" to TMC "arguably" makes the LLCs "ancillary victims" due to the close business ties between

---

[2] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

TMC and the LLCs -, i.e., the LLCs purchase, manage, sale and/or lease model homes on TMC developed properties); 2) the timing of Campus' withdrawal is detrimental to the LLCs' because of the economic downturn in the housing market; and 3) Campus' interest in the LLCs is subject to disgorgement in another lawsuit between TMC and Campus concerning Campus' service to TMC. In addition, the Plaintiffs request that the Court impose a constructive trust, equal to the Pawlowski valuation of Campus' interest in the LLCs, over certain properties owned by the LLCs.

Campus correctly argues that TMC has no standing to request a stay of rights and obligations under the LLC's Operating Agreements or to request a constructive trust over any property held by the LLCs.   Despite TMC's request for this Court to treat TMC, Model Homes LLC and Hexagon LLC as one in the same, the fact remains that TMC has no legal or corporate connection to the LLCs.   TMC is not a party to either of the LLCs' Operating Agreements and TMC is not even mentioned in the LLCs' formation documents.   TMC is a wholly separate legal entity from the LLCs.  Moreover, there is no indication in the record that TMC is an intended third-party beneficiary of the LLCs' Operating Agreements and TMC does not allege this in its Complaint.   See, e.g., Edwards v. Costner, 979 So.2d 757, 763 (Ala. 2007).  See also Dunning v. New England Life Ins. Co., 890 So.2d 92, 97 (Ala. 2003) (providing that "[a] party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental benefit upon the third party[]").

TMC has alleged that the LLCs were formed and given business opportunities by TMC in order to bestow a benefit to its officers (e.g., additional compensation or "perks").   Regardless, whether Campus would have been offered the opportunity to join the LLCs and receive additional compensation through such membership if not for his status as an officer and director of the TMC,

is irrelevant to the relief requested.  There is no allegation that TMC has any legally protected interest in either Model Homes and/or Hexagon, or vice-versa.  Accordingly, Campus' motion to dismiss is due to be granted as to TMC's request for declaratory relief because TMC lacks standing to seek a declaration of the rights of Campus or the obligations of the LLCs under the Operating Agreement or to seek a stay of the LLCs obligations.  See, e.g., Hardy v. Jim Walter Homes, Inc., Slip Copy, 2008 WL 906455, *7 (S.D. Ala. Apr. 1, 2008) (finding that a party lacks standing to enforce an agreement or to pursue a claim for a declaratory judgment unless it is a party to, or an intended beneficiary of, the agreement).  See also e.g., 24/7 Records, 566 F. Supp. 2d at 314-315 (finding that a corporation does not have standing to assert claims belonging to a related or closely affiliated corporation simply because their businesses are intertwined); Premier Pyrotechnics, Inc. v. Zambelli Fireworks, Mfg. Co., 2005 WL 1307682, *1-2 (W.D. Mo. May 31, 2005) (same); R&B Realty, 322 F. Supp. 2d at 210 (same); Hudson Optical, 162 F.3d 1148 (same); Diesel Systems, 861 F. Supp. at 181 (same); Picture Lake, 497 F. Supp. at 863 (same).

As to the LLCs, they contend that they have standing to request declaratory relief and a constructive trust over Campus' interest in the LLCs because in the near future it is "likely" that Campus will have to disgorge some or all of his interests in the LLCs based on the outcome of TMC's underlying action against him.  However, the LLCs cannot base their claim for equitable relief upon the purported interests and injuries of TMC.  See, e.g., Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir. 1994).  See also 24/7 Records, 566 F. Supp. 2d at 314-315; Premier Pyrotechnics, 2005 WL 1307682, *2.

The LLCs also mention, in the Complaint and in their response, that if they are required to pay Campus the valuation of his membership interests, it will require liquidation of their assets (real

property) at "losses during an economic and housing slump" and not take into account the timing of Campus' withdrawal.  Moreover, the LLCs generally assert that they have been negatively impacted by Campus' conduct toward TMC.  The LLCs then point to Section 11.01(c) of the Operating Agreements and state that they have the contractual right to offset for damages sustained by the withdrawal.  This assertion may be true, however, the LLCs have not requested declaratory relief regarding their obligations pursuant to the provision that appears to allow the LLCs to offset for damages sustained by the withdrawal.  Rather, Plaintiffs state that their "only aim" is "[t]he imposition of a constructive trust - and a declaration that any action under the Operating Agreements should be stayed until Campus' rights under the same <u>are determined in the Underlying Action</u>[.]" (Doc. 51 at 12) (emphasis added).  As previously stated, the LLCs do not have standing to assert the purported injuries to TMC as a basis for staying their obligations under the Operating Agreements.

The general principles of constructive trusts were explained <u>In a re Financial Federated Title and Trust, Inc</u>., 347 F.3d 880, 891 (11th Cir. 2003):

> The doctrine of constructive trusts is a recognized tool of equity designed in certain situations to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction. <u>In re Powe</u>, 75 B.R. 387, 393 (Bankr. M.D. Fla.1987). In <u>In re First Fidelity Fin. Serv., Inc</u>., 36 B.R. 508 (Bankr. S.D. Fla. 1983), the Bankruptcy Court held that:
>
> > The reason for imposing a constructive trust is to avoid unjust enrichment to the recipient of the windfall, and to do equity for the party whose property has been misused. But a desire to do equity alone is not enough. The essence of the equitable remedy of imposing a constructive trust, as opposed to the legal remedy of damages, is the concept that the very property in question can be returned to its rightful owner. The law gradually broadened so that the proceeds of the original property may be pursued, but the basic requirement of tracing the original property, albeit in its various forms, remains an element of proof for constructive trusts.

Id. at 511 (citation omitted).

> Before one can successfully impress a constructive trust, there must be an identifiable res on which the trust can be impressed. If the original res no longer remains, but is transformed into a different form, it is the burden of the party seeking to impress a constructive trust to trace the property to specific funds before it can prevail. In re Powe, 75 B.R. at 393. Traceable proceeds from prior fraudulent transfers, which are used to acquire a homestead, may also be subject to a constructive trust. In re Lapes, 254 B.R. 501 (S.D. Fla. 2000).

There are no allegations in the complaint that indicate that TMC transferred any property to the LLCs, much less that the property sought to be put in a constructive trust is the "identifiable res" or even traceable proceeds of the profits made in the land sales at issue in the underlying case. Nor are there any allegations that TMC is the "rightful owner" of any property owned by the LLCs. Rather, the Plaintiffs seeks to impose a constructive trust over the LLCs' property in order to have this asset available to satisfy a potential judgment in the underlying action between TMC and Campus. This is an improper use of a constructive trust.

## III.   Conclusion

Based upon the foregoing, Campus' Motion to Dismiss Plaintiffs' Complaint is **GRANTED.**[3]

**DONE** and **ORDERED** this the **17th** day of **June 2009.**

/s/ Kristi K. DuBose
**KRISTI K. DUBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[3] Even with the dismissal of Plaintiffs' Complaint, there is an independent jurisdictional basis, namely diversity jurisdiction, for Campus' counterclaims. Thus, this case will proceed with regard to those claims. See, e.g., Barr v. Hagan, 322 F. Supp. 2d 1280, 1284 (M.D. Ala. 2004). Cf. East-Bibb Twiggs Neighborhood Assoc. v. Macon Bibb Planning & Zoning Commission, 888 F.2d 1576, 1578 (11th Cir. 1989).